DEB/JWS: USAO 2012R00305

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

2013 DEC -3 P 12: 51

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| | **CRIMINAL NO.** WDQ-13-0662 |
| **v.** | |
| | |
| **ELMAR RAKHAMIMOV,** | (Conspiracy to Traffic in Contraband |
| a/k/a "Eric Rakhamimov," | Cigarettes, 18 U.S.C.§§ 371, 2342(a); |
| **ZARAKH YELIZAROV,** | Trafficking in Contraband Cigarettes, |
| **SALIM YUSUFOV,** | 18 U.S.C. §2342(a); Distribution of |
| **ARTUR ZAKHARYAN,** | Oxycodone, 21 U.S.C. § 841(a)(1) and |
| **ILGAR RAKHAMIMOV,** | (b)(1)(B); Money Laundering, |
| **TIMUR YUSUFOV,** | 18 U.S.C. § 1956(a)(1)(B); Sale of a |
| **NIKOLAY ZAKHARYAN,** | Drug Sample, 21 U.S.C. § 331(t), |
| **ADAM AZERMAN,** | 353(c)(1) and 333(b)(1)(B) Aiding and |
| **SHAMIL NOVAKHOV,** | Abetting, 18 U.S.C. §2; Forfeiture, |
| **YULIYA RAKHAMIMOV, and** | 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. |
| **RUSLAN YKIEW.** | §§982(a)(1) & (4), 21 U.S.C.§ 853(a)(1)) |
| | |
| **Defendants.** | |

---

**INDICTMENT**

**COUNT ONE**
**(Conspiracy to Traffic in Contraband Cigarettes)**

The Grand Jury for the District of Maryland charges that:

**PRELIMINARY ALLEGATIONS**

At all times material to the Indictment:

1.      Defendants **ELMAR RAKHAMIMOV, ZARAKH YELIZAROV, SALIM**

**YUSUFOV, ARTUR ZAKHARYAN, ILGAR RAKHAMIMOV, TIMUR YUSUFOV,**

**NIKOLAY ZAKHARYAN, ADAM AZERMAN, SHAMIL NOVAKHOV, YULIYA**

**RAKHAMIMOV** and **RUSLAN YKIEW** are family members and associates whose criminal

association with one another will be referred to herein collectively as the YUSUFOV

Organization. Members of the YUSUFOV Organization primarily lived in northwest Baltimore

County and New York City.  Most members of the YUSUFOV Organization are of Azerbaijani descent and most are multilingual (to include English, Russian and Azerbaijani).

2.      The YUSUFOV Organization operates multiple businesses in the Pikesville area of Baltimore County and in Baltimore City including Europe Restaurant and Healthway Pharmacy.

3.      As set forth more fully in this Indictment, the YUSUFOV ORGANIZATION was involved in a number of federal criminal violations to include Trafficking in Contraband Cigarettes in violation of 18 U.S.C. §2342(a); Distribution of Oxycodone, 21 U.S.C. § 841(a)(1) and (b)(1)(B); Money Laundering, 18 U.S.C. §1956(a)(1)(B); and Sale of Drug Samples, 21 U.S.C. § 331(t), 353(c)(1), 333(b)(1)(B).

## CONTRABAND CIGARETTES

4.      The YUSUFOV Organization has been involved in the sale and trafficking of contraband cigarettes.   Since December 2011, **ELMAR RAKHAMIMOV** has paid approximately $5.4 million in U.S. currency in exchange for contraband cigarettes.  These cigarettes are received and stored at **ELMAR RAKHAMIMOV's** residence and are transported, in large part, to New York City.   Differentials in state tax rates result in significant contraband cigarette smuggling into areas with higher tobacco tax, such as New York.    Cartons of contraband cigarettes are typically purchased by **ELMAR RAKHAMIMOV** for thirty dollars each.   The cigarettes were transported to the New York area and resold for approximately forty-five to fifty dollars per carton.

5.      The term "contraband cigarettes" is defined under Title 18, United States Code, Section 2341(2), to mean a quantity of cigarettes in excess of 10,000 cigarettes which bear no evidence of the payment of applicable state cigarette taxes in the state where such cigarettes are

2

found, if such state requires a stamp, impression or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes.

6.      A master case of contraband cigarettes typically contains thirty (30) or sixty (60) cartons of cigarettes, depending on the brand or type of cigarette. A carton of cigarettes contains ten (10) packages. Each package contains twenty (20) individual cigarettes. Therefore, one master case of contraband cigarettes typically contains 6,000 to 12,000 individual cigarettes.

7.      The States of Maryland and New York each required that each pack of cigarettes sold in the state have a tax stamp to be placed on packages or other containers of cigarettes in order to evidence the payment of applicable state cigarette taxes.

8.      On January 1, 2008, and continuing thereafter to the date of this Indictment, the State of Maryland raised its cigarette tax from $1.00 per package to $2.00 per package of cigarettes.

9.      On July 1, 2010, and continuing thereafter to the date of this Indictment, the State of New York raised its cigarette tax from $2.75 per package to $4.35 per package.

10.      In addition to the State of New York cigarette tax, during all times material to this indictment, New York City imposed a cigarette tax of $1.50 per package.

## THE CONSPIRACY TO TRAFFIC IN CONTRABAND CIGARETTES

11.      Beginning in or about November of 2011, and continuing through the date of this Indictment, in the District of Maryland, New York, and elsewhere, the defendants,

**ELMAR RAKHAMIMOV,**
**a/k/a Eric Rakhamimov,**
**ZARAKH YELIZAROV,**
**SALIM YUSUFOV,**
**ARTUR ZAKHARYAN,**
**ILGAR RAKHAMIMOV,**
**TIMUR YUSUFOV,**
**NIKOLAY ZAKHARYAN,**

**ADAM AZERMAN,**
**SHAMIL NOVAKHOV, and**
**RUSLAN YKIEW**

did willfully and knowingly combine, conspire, confederate and agree with other persons both known and unknown to the Grand Jury to commit an offense against the United States of America, that is: to unlawfully and knowingly ship, transport, receive, possess, sell, distribute and purchase contraband cigarettes, as that term is defined in 18 U.S.C. § 2341(2), namely, quantities in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable state cigarette taxes in the state where such cigarettes are found, namely the states of Maryland and New York, and said states require a stamp, impression and other indication to be placed on packages of cigarettes and other containers of cigarettes to evidence the payment of cigarette taxes, in violation of 18 U.S.C. § 2342(a).

## OBJECTS OF THE CONSPIRACY

12.     The primary objective of the conspiracy was to generate income by buying and selling contraband cigarettes and to illegally avoid the payment of all applicable state taxes on cigarettes sold within the United States.

## MANNER AND MEANS OF THE CONSPIRACY

13.     It was part of the conspiracy for **ELMAR RAKHAMIMOV, ARTUR ZAKHARYAN**, and **ILGAR RAKHAMIMOV** to act as a broker, middleman and distributor of contraband cigarettes.

14.     It was further part of the conspiracy that **NIKOLAY ZAKHARYAN, ADAM AZERMAN, SHAMIL NOVAKHOV**, and **RUSLAN YKIEW** would transport contraband cigarettes to New York and other cities for sale and further distribution.

4

15.     It was further part of the conspiracy for **ELMAR RAKHAMIMOV** and **YULIYA RAKHAMIMOV** to provide Schedule II controlled substances, prescription drugs and counterfeit prescription drugs as payment or partial payment for contraband cigarettes.

16.     It was further part of the conspiracy for **ELMAR RAKHAMIMOV**, and other conspirators to use **ELMAR RAKHAMIMOV's** residence and his restaurant to conduct the illegal transactions of contraband cigarettes, schedule II controlled substances, prescription drugs and counterfeit prescription drugs.

17.     It was further part of the conspiracy for **ELMAR RAKHAMIMOV** and **ZARAKH YELIZAROV** to launder proceeds of contraband cigarette sales through an international money laundering operation that wired funds from overseas banks that falsely concealed and disguised the money as legitimate business payments for medical equipment or supplies.

## OVERT ACTS

18.     In furtherance of the conspiracy, and to affect the objects thereof, at least one of the co-conspirators herein committed one or more of the following overt acts, among others:

a.      On or about November 19, 2011, **ELMAR RAKHAMIMOV** and **SALIM YUSUFOV** met with a third individual in Baltimore City, Maryland to discuss the acquisition and distribution of untaxed cigarettes.

b.      On or about December 7, 2011, **ELMAR RAKHAMIMOV** and **ILGAR RAKHAMIMOV** purchased 20 master cases of contraband cigarettes at Chesapeake Monuments in Owings Mills, Maryland for $18,000 in cash.

c.      On or about December 7, 2011, **SALIM YUSUFOV** received $1,900 at Healthway Pharmacy as a kickback for the contraband cigarette transaction.

d.      On or about January 13, 2012, **ELMAR RAKHAMIMOV** purchased 57 master cases of contraband cigarettes at his home for $73,800 in cash.

e.      On or about January 13, 2012, **ELMAR RAKHAMIMOV** placed an order for contraband cigarettes.

f.      On or about January 13, 2012, **SALIM YUSUFOV** received $8,200 at Healthway Pharmacy as a kickback for the contraband cigarette transaction.

g.      On or about February 13, 2012, **ELMAR RAKHAMIMOV** purchased 96 master cases of contraband cigarettes at his home for $142,000 in cash.

h.      On or about February 14, 2012, **RUSLAN YKIEW** transported some of the contraband cigarettes from **ELMAR RAKHAMIMOV**'s residence to Brooklyn, New York. Once in New York, **RUSLAN YKIEW** and **SHAMIL NOVAKHOV** unloaded the contraband cigarettes into a commercial building.

i.      On or about February 22, 2012, **SALIM YUSUFOV** received $8,200 at Healthway Pharmacy as a kickback for the contraband cigarette transaction.

j.      On or about March 6, 2012, **ELMAR RAKHAMIMOV** purchased 86 master cases of contraband cigarettes at his home for $133,200 in cash.

k.      On or about March 8, 2012, **SALIM YUSUFOV** received $9,200 at Healthway Pharmacy as a kickback for the contraband cigarette transaction.

l.      On or about March 29, 2012, **ELMAR RAKHAMIMOV** purchased 106 master cases of contraband cigarettes at his home for $169,200 in cash.

m.      On or about March 29, 2012, **SALIM YUSUFOV** received $11,000 at Healthway Pharmacy as a kickback for the contraband cigarette transaction.

n.   On or about April 25, 2012, **ELMAR RAKHAMIMOV** and **ILGAR RAKHAMIMOV** purchased 189 master cases of contraband cigarettes at **ELMAR RAKHAMIMOV**'s home for $322,200 in cash.

o.   On or about April 30, 2012, **SALIM YUSUFOV** received $14,400 at Healthway Pharmacy as a kickback for the contraband cigarette transaction.

p.   On or about May 16, 2012, **ELMAR RAKHAMIMOV**, **ILGAR RAKHAMIMOV** and **NIKOLAY ZAKHARYAN** purchased 200 master cases of contraband cigarettes at **ELMAR RAKHAMIMOV**'s home for $318,600 in cash.

q.   On or about May 23, 2012, **SALIM YUSUFOV** received $14,400 at Healthway Pharmacy as a kickback for the contraband cigarette transaction.

r.   On or about June 12, 2012, **ELMAR RAKHAMIMOV** purchased 211 master cases of contraband cigarettes at his home for $293,400 in cash.  **NIKOLAY ZAKHARYAN** and **ILGAR RAKHAMIMOV** participated in the transaction.

s.   On or about June 14, 2012, **SALIM YUSUFOV** received $10,200 at Healthway Pharmacy as a kickback for the contraband cigarette transaction.

t.   On or about August 7, 2012, **ELMAR RAKHAMIMOV** purchased 230 master cases of contraband cigarettes at his home for $288,900 in cash.  **NIKOLAY ZAKHARYAN** participated in the transaction.

u.   On or about September 12, 2012, **SALIM YUSUFOV** received $3,800 at Healthway Pharmacy as a kickback for the August 7, 2012 contraband cigarette transaction.

v.   On September 24, 2012, **ELMAR RAKHAMIMOV** discussed laundering the cash payments for the contraband cigarettes through a bank in Russia.

w.     On or about October 11, 2012, **ELMAR RAKHAMIMOV** purchased 348 master cases of contraband cigarettes at his home for $455,400 in cash.  **ELMAR RAKHAMIMOV** took $100,000 of the payment back and agreed to launder it through an international money laundering operation.

x.     On October 23, 2012, **ELMAR RAKHAMIMOV** and **ZARAKH YELIZAROV** met with a third individual at **ELMAR RAKHAMIMOV**'s home to discuss the procedures for laundering the payments for the contraband cigarettes.

y.     On or about December 27, 2012, **ELMAR RAKHAMIMOV** and **ZARAKH YELIZAROV** caused $89,500 to be deposited by wire into a bank account in the United States.  The wire was initiated from a bank in Riga, Latvia, from a company account headquartered in Belize City, Belize.  The wire transaction included a fraudulent reference indicating that the funds were for the sale of medical scanning equipment.

z.     On or about December 28, 2012, **TIMUR YUSUFOV** purchased 351 master cases of contraband cigarettes at **ELMAR RAKHAMIMOV**'s home for $530,000 in cash. **NIKOLAY ZAKHARYAN** unloaded the contraband cigarettes and placed them into the garage of the residence. The transaction was arranged by **ELMAR RAKHAMIMOV** while he was out of the country.

aa.     On or about February 13, 2013, **ELMAR RAKHAMIMOV, ZARAKH YELIZAROV,** and **NIKOLAY ZAKHARYAN** purchased 460 master cases of contraband cigarettes for $624,800 in cash.  **ELMAR RAKHAMIMOV** and **ZARAKH YELIZAROV** took $50,000 of the payment back and agreed to launder the proceeds through an international money laundering operation.  **ELMAR RAKHAMIMOV** and **ZARAKH YELIZAROV** were

provided an additional $150,000 in cash and agreed to launder the proceeds through an international money laundering operation.

bb.     On or about February 20, 22, 25 and 26, 2013, **ELMAR RAKHAMIMOV**, and **ZARAKH YELIZAROV** caused a total of $184,000 to be transferred via four wire transfers from bank accounts in Latvia and Cyprus, to a bank account in the United States.

cc.     On March 28, 2013, **ELMAR RAKHAMIMOV** placed an order for 315 cases of contraband cigarettes via text message.

dd.     On or about April 23, 2013, **ELMAR RAKHAMIMOV**, **ZARAKH YELIZAROV**, and **NIKOLAY ZAKHARYAN** purchased 258 master cases of contraband cigarettes at **ELMAR RAKHAMIMOV**'s home for $329,400 in cash. **ELMAR RAKHAMIMOV** and **ZARAKH YELIZAROV** took $150,000 of the payment back and agreed to launder it through an international money laundering operation.

ee.     On or about April 23, 2013, **ELMAR RAKHAMIMOV**, **NIKOLAY ZAKHARYAN** and **ILGAR RAKHAMIMOV** coordinated the counting and transportation of the contraband cigarettes.

ff.     On or about April 26, 2013, April 29, 2013, May 16, 2013, and May 23, 2013, **ZARAKH YELIZAROV** and **ELMAR RAKHAMIMOV** caused a total of $138,000 to be transferred via wire transfers from bank accounts in Latvia to a bank account in the United States.

gg.     On or about May 5, 2013, **ELMAR RAKHAMIMOV** coordinated with **ARTUR ZAKHARYAN** to count the money for an upcoming contraband cigarette delivery.

hh.   On or about May 6, 2013, **ADAM AZERMAN** transported contraband cigarettes from **ELMAR RAKHAMIMOV**'s home to **SHAMIL NOVAKHOV** in Brooklyn, New York.

ii.   On or about May 7, 2013, **ELMAR RAKHAMIMOV** and **NIKOLAY ZAKHARYAN** received 50 master cases of contraband cigarettes at **ELMAR RAKHAMIMOV**'s home for $85,500 in cash.  On May 8, 2013, **ELMAR RAKHAMIMOV** paid $85,500 in cash for contraband cigarettes received on May 7, 2013.

jj.   On or about May 8, 2013, **ELMAR RAKHAMIMOV** provided $85,500 at his home as payment for the contraband cigarettes received on May 7, 2013.

kk.   On or about May 8, 2013, **ELMAR RAKHAMIMOV** and **ARTUR ZAKHARYAN** discussed coordinating the finances of the contraband cigarette delivery that occurred on May 7, 2013.

ll.   On or about May 9, 2013, **ELMAR RAKHAMIMOV** and **NIKOLAY ZAKHARYAN** coordinated the counting and transportation of contraband cigarettes.

mm.   On or about May 10, 2013, **ADAM AZERMAN** delivered contraband cigarettes to **SHAMIL NOVAKHOV** in Brooklyn, New York.

nn.   On or about June 9, 2013, **ELMAR RAKHAMIMOV** coordinated with **ILGAR RAKHAMIMOV** to obtain money from other co-conspirators for contraband cigarettes.

oo:   On or about June 10, 2013, **ELMAR RAKHAMIMOV** purchased 102 master cases of contraband cigarettes at his home for $162,900 in cash.  **ELMAR RAKHAMIMOV** retained $50,000 of the payment and agreed to launder the proceeds through an international money laundering operation.

pp.   On or about June 10, 2013, **ELMAR RAKHAMIMOV** and **ILGAR RAKHAMIMOV** coordinated the transportation and financing of contraband cigarettes.

qq.   On or about June 25, 2013, **ZARAKH YELIZAROV** and **ELMAR RAKHAMIMOV** caused a total of $46,000 to be transferred via wire transfers from a bank account in Cyprus, to a bank account in the United States.

rr.   On or about July 10, 2013, **ARTUR ZAKHARYAN** received 202 master cases of contraband cigarettes at **ELMAR RAKHAMIMOV**'s residence.

ss.   On or about July 10, 2013, **ARTUR ZAKHARYAN** and **ELMAR RAKHAMIMOV** coordinated to count, conceal, and store contraband cigarettes.

tt.   On or about July 16, 2013, **ELMAR RAKHAMIMOV** paid $205,000 in cash at his residence for the contraband cigarettes delivered on July 10, 2013.

uu.   On or about July 20, 2013, **ELMAR RAKHAMIMOV** and **ILGAR RAKHAMIMOV** coordinated the transportation of cash for the purchase of contraband cigarettes.

vv.   On or about August 14, 2013, **ZARAKH YELIZAROV** and **ELMAR RAKHAMIMOV** caused a total of $60,000 to be transferred via wire transfers from bank accounts in Estonia to a bank account in the United States.

ww.   On or about August 16, 2013, **ELMAR RAKHAMIMOV** purchased 508 master cases of contraband cigarettes at his home for $812,700.00 in cash.   **ELMAR RAKHAMIMOV** took $200,000 of the payment back and agreed to launder the proceeds through an international money laundering operation.

xx.    On or about August 21, 2013, **ZARAKH YELIZAROV** and **ELMAR RAKHAMIMOV** caused a total of $99,950 to be transferred via wire transfers from a bank account in New York to a bank account in Maryland.

yy.    On or about September 5, 2013, **ZARAKH YELIZAROV** and **ELMAR RAKHAMIMOV** caused a total of $32,000 to be transferred via wire transfers from bank accounts in Estonia to a bank account in the United States.

zz.    On or about November 7, 2013, **ELMAR RAKHAMIMOV** purchased 450 master cases of contraband cigarettes at his home for $702,000 in cash.

18 U.S.C. § 371

## COUNTS TWO THROUGH NINETEEN
### (Trafficking in Contraband Cigarettes)

1.      The allegations contained in Paragraphs 1 through 10 and 12 through 18 of Count One are re-alleged and incorporated as if fully set out herein.

2.      On or about the dates alleged below, in the District of Maryland, New York, and elsewhere, the below named defendants, did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), in the approximate amount(s) alleged below, which bore no evidence of the payment of applicable State cigarette taxes for the States of Maryland and New York:

| Count | Date | Defendants | Number of Cases and Cigarettes |
|---|---|---|---|
| 2 | December 7, 2011 | **ELMAR RAKHAMIMOV ILGAR RAKHAMIMOV &, SALIM YUSUFOV** | 20 cases/600 cartons/ 120,000 cigarettes |
| 3 | January 13, 2012 | **ELMAR RAKHAMIMOV & SALIM YUSUFOV** | 57 cases/2,670 cartons/ 534,000 cigarettes |
| 4 | February 13, 2013 through February 22, 2013 | **ELMAR RAKHAMIMOV, SALIM YUSUFOV, RUSLAN YKIEW & SHAMIL NOVAKHOV** | 96 cases/4,830 cartons/ 966,000 cigarettes |
| 5 | March 6, 2012 through March 8, 2012 | **ELMAR RAKHAMIMOV & SALIM YUSUFOV** | 86 cases/4,440 cartons/ 888,000 cigarettes |
| 6 | March 29, 2012 | **ELMAR RAKHAMIMOV & SALIM YUSUFOV** | 106 cases/5,640 cartons/ 1,128,000 cigarettes |
| 7 | April 25, 2012 through April 30, 2012 | **ELMAR RAKHAMIMOV ILGAR RAKHAMIMOV, & SALIM YUSUFOV** | 189 cases/10,740 cartons/ 2,148,000 cigarettes |
| 8 | May 16, 2012 through May 23, 2012 | **ELMAR RAKHAMIMOV ILGAR RAKHAMIMOV, NIKOLAY ZAKHARYAN & SALIM YUSUFOV** | 200 cases/10,620,cartons/ 2,124,000 cigarettes |

| Count | Date | Defendants | Number of Cases and Cigarettes |
|-------|------|------------|-------------------------------|
| 9 | June 12, 2012 through June 14, 2012 | ELMAR RAKHAMIMOV, ILGAR RAKHAMIMOV, NIKOLAY ZAKHARYAN & SALIM YUSUFOV | 211 cases/9,780 cartons/ 1,956,000 cigarettes |
| 10 | August 7, 2012 through September 12, 2012 | ELMAR RAKHAMIMOV, NIKOLAY ZAKHARYAN & SALIM YUSUFOV | 230 cases/9,630 cartons/ 1,926,000 cigarettes |
| 11 | October 11, 2012 | ELMAR RAKHAMIMOV | 348 cases/15,180 cartons/ 3,036,000 cigarettes |
| 12 | December 28, 2012 | ELMAR RAKHAMIMOV, TIMUR YUSUFOV, & NIKOLAY ZAKHARYAN | 351 cases/17,820 cartons/ 3,564,000 cigarettes |
| 13 | February 13, 2013 | ELMAR RAKHAMIMOV, ZARAKH YELIZAROV & NIKOLAY ZAKHARYAN | 460 cases/22,800 cartons/ 4,560,000 cigarettes |
| 14 | April 23, 2013 through May 6, 2013 | ELMAR RAKHAMIMOV, ZARAKH YELIZAROV, NIKOLAY ZAKHARYAN, ILGAR RAKHAMIMOV & ADAM AZERMAN | 258 cases/10,980 cartons/ 2,196,000 cigarettes |
| 15 | May 7, 2013 through May 10, 2013 | ELMAR RAKHAMIMOV, ARTUR ZAKHARYAN, NIKOLAY ZAKHARYAN, ADAM AZERMAN, & SHAMIL NOVAKHOV | 50 cases/2,850 cartons/ 570,000 cigarettes |
| 16 | June 10, 2013 | ELMAR RAKHAMIMOV & ILGAR RAKHAMIMOV | 102 cases/5,430 cartons/ 1,086,000 cigarettes |
| 17 | July 10, 2013 through July 16, 2013 | ELMAR RAKHAMIMOV & ARTUR ZAKHARYAN | 202 cases/6,840 cartons/ 1,368,000 cigarettes |
| 18 | August 16, 2013 | ELMAR RAKHAMIMOV & NIKOLAY ZAKHARYAN | 508 cases/27,090 cartons/5,418,000 cigarettes |
| 19 | November 7, 2013 | ELMAR RAKHAMIMOV & NIKOLAY ZAKHARYAN | 450 cases/23,400 cartons/4,680,000 cigarettes |

18 U.S.C. §2342(a)
18 U.S.C. §2

## COUNTS TWENTY THROUGH TWENTY-NINE
### (Distribution of Oxycodone)

The Grand Jury for the District of Maryland further charges that:

1.     The allegations contained in  Paragraphs 1 through 10 and 12 through 18 of Count One are re-alleged and incorporated as if fully set out herein.

2.     On or about the dates alleged below, in the District of Maryland and elsewhere, the below named defendants, knowingly, intentionally, and unlawfully did distribute, dispense, and possess with the intent to distribute a quantity of a mixture or substance containing a detectable amount of Oxycodone, a Schedule II controlled substance:

| Count | Date | Defendants | Substance |
|-------|------|-----------|-----------|
| 20 | December 19, 2012 | **ELMAR RAKHAMIMOV** | Oxycodone |
| 21 | February 13, 2013 | **ELMAR RAKHAMIMOV** | Oxycodone |
| 22 | March 21, 2013 | **ELMAR RAKHAMIMOV** | Oxycodone |
| 23 | April 17, 2013 | **ELMAR RAKHAMIMOV** | Oxycodone |
| 24 | June 10, 2013 | **ELMAR RAKHAMIMOV** | Oxycodone |
| 25 | July 3, 2013 | **ELMAR RAKHAMIMOV** | Oxycodone |
| 26 | July 16, 2013 | **ELMAR RAKHAMIMOV** | Oxycodone |
| 27 | August 16, 2013 | **ELMAR RAKHAMIMOV** | Oxycodone |
| 28 | September 9, 2013 | **ELMAR RAKHAMIMOV, & YULIYA RAKHAMIMOV** | Oxycodone |
| 29 | October 28, 2013 | **ELMAR RAKHAMIMOV, & YULIYA RAKHAMIMOV** | Oxycodone |

21 U.S.C. § 841 (a)(1) and (b)(1)(B)
18 U.S.C. § 2

## COUNTS THIRTY THROUGH FORTY-TWO
### (Money Laundering)

The Grand Jury for the District of Maryland further charges that:

1.      The allegations set forth in Paragraphs 1 through 10 and 12 through 18 of Count One are incorporated here

2.      On or the about the dates alleged below, in the District of Maryland and elsewhere, the defendants,

### ELMAR RAKHAMIMOV and
### ZARAKH YELIZAROV,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is trafficking in contraband cigarettes, in violation of Title 18 United States Code Section 2342, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control  of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, as alleged below:

a.      On October 11, 2013, $100,000 in U.S. currency was provided to the defendants, and the defendants wired the funds as alleged below:

| Count | Date of Wire | Amount of Wire | Originating Bank & Location |
|---|---|---|---|
| 30 | December 27, 2012 | $89,500 | Baltikums Bank, Riga, Latvia |

16

b.    On February 13, 2013, $200,000 in U.S. currency was provided to the defendants, and the defendants wired the funds as alleged below:

| Count | Date of Wire | Amount of Wire | Originating Bank & Location |
|-------|--------------|----------------|------------------------------|
| 31 | February 20, 2013 | $50,000 | Euro Bank, Cyprus |
| 32 | February 22, 2013 | $50,000 | Euro Bank, Cyprus |
| 33 | February 25, 2013 | $50,000 | Baltikums Bank, Latvia |
| 34 | February 26, 2013 | $34,000 | National Bank of Greece, Cyprus |

c.    On April 23, 2013, $150,000 in U.S. currency was provided to the defendants, and the defendants wired the funds as alleged below:

| Count | Date of Wire | Amount of Wire | Originating Bank & Location |
|-------|--------------|----------------|------------------------------|
| 35 | April 26, 2013 | $34,500 | Baltikums Bank, Latvia |
| 36 | April 29, 2013 | $34,500 | Baltikums Bank, Latvia |
| 37 | May 16, 2013 | $34,500 | Baltikums Bank, Latvia |
| 38 | May 23, 2013 | $34,500 | Baltikums Bank, Latvia |

d.    On June 10, 2013, $50,000 in U.S. currency was provided to the defendants, and the defendants wired the funds as alleged below:

| Count | Date of Wire | Amount of Wire | Originating Bank & Location |
|-------|--------------|----------------|------------------------------|
| 39 | June 25, 2013 | $46,000 | Euro Bank, Cyprus |

e.    On August 16, 2013, $250,000 in U.S. currency was provided to the defendants, and the defendants wired the funds as alleged below:

| Count | Date of Wire | Amount of Wire | Originating Bank & Location |
|-------|--------------|----------------|-----------------------------|
| 40 | August 21, 2013 | $99,950 | Citibank, New York |
| 41 | September 5, 2013 | $32,000 | Danske Bank, Estonia |

18 U.S.C. §§ 1956(a)(1)(B)(i) and 2
18 U.S.C. § 2

## COUNT FORTY-TWO
### (Sale of a Drug Sample)

The Grand Jury for the District of Maryland further charges that:

1.      The allegations set forth in Paragraphs 1 through 10 and 12 through 18 of Count

One are incorporated here

2.      On or about December 19, 2012, in the District of Maryland,

### ELMAR RAKHAMIMOV,

the defendant herein, did knowingly sell, purchase, and trade a prescription drug sample.


21 U.S.C. § 331(t), 353(c)(1) and 333(b)(1)(B)
18 U.S.C. § 2

19

## FORFEITURE

The Grand Jury for the District of Maryland further charges that:

1.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C), upon conviction

of the offenses alleged in Counts One through Nineteen of this Indictment, the defendants,

**ELMAR RAKHAMIMOV,
a/k/a Eric Rakhamimov,
ZARAKH YELIZAROV,
SALIM YUSUFOV,
ARTUR ZAKHARYAN,
ILGAR RAKHAMIMOV,
TIMUR YUSUFOV,
NIKOLAY ZAKHARYAN,
ADAM AZERMAN,
SHAMIL NOVAKHOV, and
RUSLAN YKIEW,**

shall forfeit to the United States any property, real and personal, that constitutes and is derived

from proceeds traceable to the scheme to defraud, including but not limited to the following

specific property: a sum of money of at least $6,696,900.00.[1]

2.     Pursuant to Title 21, United States Code, Section 853, upon conviction of the

offenses alleged in Counts Twenty through Twenty-Nine, the defendants,

**ELMAR RAKHAMIMOV,
YULIYA RAKHAMIMOV,**

shall be jointly and severally liable to forfeit to the United States of America:

   a.     any property constituting, or derived from, any proceeds obtained, directly
          or indirectly, as the result of such offense[s] and

   b.     any property used, or intended to be used, in any manner or part, to
          commit, or to facilitate the commission of, the offense(s).

The property to be forfeited includes, but is not limited to, the following:

---

[1]The forfeiture amount for Counts One through Eighteen is based on 191,340 cartons of
contraband cigarettes sold at a minimum of $35 per carton over the indictment period.

    a.       $120,404.00;[2] and

    b.       All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 12139 Woodsyde Court, Owings Mills, Maryland 21117.

3.       Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of

the offenses alleged in Counts Thirty through Forty-One, the defendants:

**ELMAR RAKHAMIMOV,** and
**ZARAKH YELIZAROV,**

shall forfeit to the United States of America any property, real or personal, involved in such

offense, and any property traceable to such property. The property to be forfeited includes, but is

not limited to, the following:

    a.       A money judgment of at least $589,450.00;

    b.       Any funds in Eurobank EFG Cyprus LTD 04452389, account number CY53018000030000201 10010;

    c.       Any funds in Eurobank EFG Cyprus LTD 04452389, account number CY94018000030000201 10010;

    d.       Any funds in Eurobank EFG Cyprus LTD 04452389, account number CY90018000030000201 10021;

    e.       Any funds in National Bank of Greece LTD 04033248, account number CY16006005500000000550793;

    f.       Any funds in Baltikums Bank 04445795, account number LV07CBR1122031200010;

    g.       Any funds in Baltikums Bank 04445795, account number LV03CBBR1121978900010;

    h.       Any funds in Baltikums Bank 04445795, account number LV51CBBR1122596800010

    i.       Any funds in Baltikums Bank S/CBBRLV22, account number

---

[2] The forfeiture amount for Counts Twenty through Twenty-nine is based on the gross receipts from the Oxycodone distribution.

LV03CBBR1121978900010; and

j.    Any funds in Danske Bank A/S, Estonia Branch 04182438, account
      number EE693300333514580000.

4.    If any of the property described above, as a result of any action or omission of the

defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided

      without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code Section 853(p), as incorporated by Title 28, United States Code 2461(c)

up to the value of the property listed above, including but not limited to the following:

1)    As to **ELMAR RAKHAMIMOV, a/k/a "Eric Rakhamimov,":**

      a. All that lot or parcel of land, together with its buildings,
         appurtenances, improvements, fixtures, attachments and easements,
         located at 12139 Woodsyde Court, Owings Mills, Maryland 21117,
         more particularly described as: and,

      b. Contents of Bank of America checking account number 3919686062,
         in the name of Elmar Rakhamimov and Yuliya Rakhamimov;

2)    As to **ZARAKH YELIZAROV:**

      a. All that lot or parcel of land, together with its buildings,
         appurtenances, improvements, fixtures, attachments and easements,
         located at 1818 Autumn Frost Lane, Baltimore, Maryland 21209;

3)    **SALIM YUSUFOV:**

      a. All that lot or parcel of land, together with its buildings,

appurtenances, improvements, fixtures, attachments and easements, located at 7010 Rock Stream Court, Baltimore, Maryland 21209, more particularly described as: and,

b. Contents of UBS Financial Services account number JW 07910, in the name of Salim Yusufov; and

c. Contents of UBS Financial Services account number JW 43634, in the name of Salim Yusufov;

4)   **ILGAR RAKHAMIMOV,**

a. All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 23 Willwood Court, Baltimore, Maryland 21209, more particularly described as: and,

b. All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 2213A Woodbox Lane, Unit 2213A, Baltimore, Maryland 21209, more particularly described as: ;

5)   **TIMUR YUSUFOV,**

a. All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 3507 Englemeade Road, Pikesville, Maryland 21208, more particularly described as: and,

b. Contents of SunTrust Bank account number 1000044085610, in the name of Timur Yusufov;

c. Contents of Bank of America account number 3937731494, in the name of Timur Yusufov;

d. Contents of M&T Bank account number 910989840, in the name of Timur Yusufov;

e. Contents of UBS Financial Services account number JW 08662, in the name of Timur Yusufov;

f. Contents of UBS Financial Services account number JW 11567, in the name of Timur Yusufov;

g. Contents of UBS Financial Services account number JW 12817, in the name of Timur Yusufov;

h. Contents of UBS Financial Services account number JW 43635, in the name of Timur Yusufov; and

6) **ADAM AZERMAN,**

a. One 2010 Dodge Grand Caravan, bearing Maryland Tag: 3AZ9213, and VIN: 2D4RN1AE0AR303718, registered to Adam Azerman.

Rod J. Rosenstein
United States Attorney

A TRUE BILL

**SIGNATURE REDACTED**

Foreperson

Date: 12/3/13